**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-12848

————————————————

JEREMIAS MEDRADO PASQUAL-ANDRES,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A208-197-319

————————————————

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

ABUDU, Circuit Judge:

Jeremias Pasqual-Andres moved to reopen his proceedings in immigration court, alleging that his former counsel had rendered him ineffective assistance. Though he reported his former counsel's misconduct to the Executive Office of Immigration

Review's ("EOIR") Disciplinary Counsel, the Board of Immigration Appeals ("BIA") held that Pasqual-Andres should have reported his counsel to the state bar under *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), *overruled in part by Matter of Compean*, 24 I. & N. Dec. 710, 710 (A.G. 2009), *reinstated*, 25 I. & N. Dec. 1 (A.G. 2009). The BIA denied his motion to reopen on that ground. Pasqual-Andres now petitions for review, asserting that the denial was an error. After a thorough review of the record and the parties' briefs, and with the benefit of oral argument, we grant Pasqual-Andres's petition for review.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Jeremias Pasqual-Andres, a native and citizen of Guatemala, entered the United States on October 8, 2015, when he was 11 years old. Within the week, the Department of Homeland Security ("DHS") served him with a notice to appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a non-citizen present in the United States without being admitted or paroled. Throughout this process, Pasqual-Andres was represented by counsel Ernesto Varas and his firm. Through Varas, Pasqual-Andres admitted the factual allegations in the NTA and conceded his

---

[1] We appointed Travis Ramey and the University of Alabama School of Law's Appellate Advocacy Clinic to represent Pasqual-Andres in this case. Christopher Alhorn and Sanderson Wall presented at oral argument. We thank Ramey, Alhorn, Wall, and the Clinic for their service to the Court and for their excellent representation of Pasqual-Andres.

inadmissibility. He applied for asylum pursuant to INA § 208(a), 8 U.S.C. § 1158(a); withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); and relief under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c).

At his September 2018 merits hearing, Pasqual-Andres testified in support of his applications through an interpreter. After this hearing, the immigration judge ("IJ") denied Pasqual-Andres's requests for relief. The IJ found that Pasqual-Andres was not credible, and even if he were, he was not eligible for asylum because he failed to sufficiently allege persecution, and his alleged social groups were not cognizable. Additionally, the IJ found that Pasqual-Andres had not established his eligibility for withholding of removal or CAT relief.

Pasqual-Andres administratively appealed this determination to the BIA, filing a six-page brief that indicated it was filed *pro se*. The brief generally challenged the IJ's findings related to asylum and withholding of removal, and its determination that he had failed to establish a particular social group. The brief did not address the IJ's credibility determination or the denial of CAT relief. Additionally, the brief contained some inaccuracies, such as using she/her pronouns for Pasqual-Andres, who is a man.

In July 2020, the BIA dismissed Pasqual-Andres's appeal, agreeing with the IJ that Pasqual-Andres had not established his eligibility for asylum even if he had testified credibly. The BIA found no clear error in the IJ's determination that Pasqual-Andres's claim lacked the requisite nexus to the asserted particular social groups.

It reasoned that because Pasqual-Andres had not established his eligibility for asylum, he also had failed to meet his burden for withholding of removal, which is higher. It also noted that Pasqual-Andres did not challenge the IJ's CAT determination on appeal.

In late 2020, Jessica Palumbo entered a notice of appearance on behalf of Pasqual-Andres and filed a motion to reopen the proceedings based on ineffective assistance of appellate counsel. The motion asserted that Pasqual-Andres and his mother had sought legal assistance from Varas for his appeal, but Varas filed an "anemic and largely unresponsive brief" that failed to challenge the IJ's credibility findings, the IJ's conclusions regarding his eligibility for CAT relief, and his eligibility for asylum. The motion averred that the brief was so deficient that it was as if no brief had been filed at all. It argued that Pasqual-Andres's BIA materials were presented as filed *pro se*, but they were written and filed by Varas, without Pasqual-Andres's involvement, as evidenced by the errors. It contended that Varas's preparation and filing of the appellate materials constituted legal "practice" before the EOIR, and that practice fell below the standards of competent practitioners.

The motion indicated that Pasqual-Andres complied with all three procedural steps required to present a claim for ineffective assistance of counsel to the BIA, as the BIA had prescribed in *Lozada*. Relevant here, *Lozada* requires immigration petitioners asserting ineffective assistance of counsel to file "a complaint . . . with appropriate disciplinary authorities regarding [the alleged deficient] representation." 19 I. & N. Dec. at 639. Several

22-12848               Opinion of the Court                    5

exhibits were attached to the motion that, in Pasqual-Andres's view, showed that he had complied with *Lozada*.  In particular, Pasqual-Andres provided a copy of an EOIR complaint he had filed against Varas for ineffective assistance of counsel.  The motion alternatively asked the BIA to reopen the case *sua sponte*.

In July 2022, the BIA denied Pasqual-Andres's motion to reopen, concluding that he failed to comply with the third prong of *Lozada*, the disciplinary complaint requirement.  Particularly, the BIA found that Pasqual-Andres did not file a complaint against his former counsel with the proper disciplinary authority—the state bar—or adequately explain why he did not file such a complaint.[2]

The BIA acknowledged that Pasqual-Andres submitted a complaint against Varas to the EOIR, but it explained that this complaint was, in its view, insufficient.  It noted that the EOIR Disciplinary Counsel did not have the authority to expel, disbar, or otherwise suspend an attorney in all venues, unlike state bar authorities.  Therefore, any adverse action as a result of the filing would pertain solely to matters within the jurisdiction of the EOIR.  As such, it found that the complaint was not in conformance with the purpose of the *Lozada* requirement at issue, which was intended to deter meritless claims of ineffective assistance.  Without a bar complaint, the BIA held that Pasqual-Andres had not substantially complied with the third *Lozada* requirement, and it denied his motion to

---

[2] The DHS opposed Pasqual-Andres's motion to reopen, arguing that he did not meet *Lozada*'s second requirement, the notice requirement, but did not contest that the EOIR was an appropriate disciplinary authority.

reopen based on ineffective assistance of counsel. The BIA also found, in viewing the whole record, that the circumstances of the case did not present an exceptional situation that would warrant exercising its *sua sponte* authority to reopen the proceedings.

Pasqual-Andres timely petitioned this Court for review of the BIA's denial of his motion to reopen, arguing, primarily, that the EOIR complaint he filed is sufficient under *Lozada*.

## II.    STANDARD OF REVIEW

We review the BIA's denial of a motion to reopen for an abuse of discretion, but we review its underlying legal conclusions *de novo*. *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1315 (11th Cir. 2022); *see also Yaner Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007). When we review for abuse of discretion, we ask whether the BIA exercised its discretion arbitrarily or capriciously. *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013). The BIA can abuse its discretion by making an error of law, or by failing to follow "its own precedents without providing a reasoned explanation for doing so." *Id.*

## III.    DISCUSSION

Pasqual-Andres contends that he substantially, if not strictly, complied with the third prong of *Lozada*, because the EOIR complaint was a complaint to an appropriate disciplinary authority under the pertinent case law. Even if he did not exactly comply with *Lozada*, moreover, he argues that the EOIR complaint constituted substantial compliance with *Lozada*, which is sufficient.

### A. Pasqual-Andres's Claim Was Sufficiently Exhausted

As an initial note, the government contends that Pasqual-Andres failed to exhaust his administrative remedies because he did not argue to the BIA that his EOIR complaint was an appropriate disciplinary authority. Section 1252(d)(1) provides, in relevant part, that a court can review a final order of removal only if the petitioner "exhausted all administrative remedies available to [them] as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). The Supreme Court recently clarified that the obligation to exhaust administrative remedies is not jurisdictional and is subject to waiver and forfeiture. *Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023); *see Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023) (explaining that Section 1252(d)(1) is a claims-processing rule post-*Santos-Zacaria*, and it applies when it is timely asserted by a party).

To exhaust a claim, a petitioner must raise the "core issue" to the BIA and reasonably set out their arguments related to that issue. *Jeune v. U.S. Att'y. Gen.*, 810 F.3d 792, 800 (11th Cir. 2016) (quoting *Montano Cisneros v. U.S. Att'y. Gen.*, 514 F.3d 1224, 1229 n.3 (11th Cir. 2008)), *overruled in part on other grounds by Santos-Zacaria*, 598 U.S. at 419–23 & n.2. We have explained that this exhaustion provision is "not a stringent requirement." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015), *overruled in part on other grounds by Santos-Zacaria*, 598 U.S. at 419–23 & n.2.

However, as a matter of common sense, a petitioner cannot raise an argument that the BIA erred in a decision that the BIA has

yet to make.  *See Morales v. U.S. Att'y Gen.*, 33 F.4th 1303, 1308 (11th Cir. 2022), *overruled in part on other grounds by Santos-Zacaria*, 598 U.S. at 419–23 & n.2.  In *Indrawati*, for example, we held that it would be "facially nonsensical" to fault a petitioner for not raising an argument about a BIA decision not yet in existence.  779 F.3d at 1299.  Accordingly, if a petitioner adequately argues the core issue of whether he has satisfied a set of requirements to the BIA, he does not have to predict the specific ground on which the BIA might find that he did not do so in order to exhaust.  *See id.*

Here, Pasqual-Andres raised the "core issue" of his *Lozada* compliance before the BIA in his motion to reopen, and thus properly exhausted his administrative remedies.  *Jeune*, 810 F.3d at 800.  He directly asserted that he "engaged in all three steps prescribed under *Matter of Lozada*," and listed the EOIR complaint as "[s]upporting [e]vidence" for "*Lozada* [c]ompliance."  The BIA understood Pasqual-Andres to assert that he met *Lozada*'s requirements, and then it found otherwise.  He did not have the opportunity to more directly address whether the filing of a state bar complaint is an absolute requirement under *Lozada* because the need to make such an argument only arose *after* the BIA ruled against him.  As a matter of logic, Pasqual-Andres did not have an opportunity to challenge the reasoning underlying the BIA's order before the BIA issued the order.  It would be "facially nonsensical" to fault him for failing to raise more specific arguments.  *See Indrawati* 779 F.3d at 1299.  We do not do so here.  We find the claim to be sufficiently exhausted.  *See Morales*, 33 F.4th at 1308.

## B.  *Pasqual-Andres Strictly Complied with* **Lozada**

Non-citizens have the right to effective assistance of counsel in deportation proceedings.  *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1221 (11th Cir. 2003); *see also Frech v. U.S. Att'y Gen.*, 491 F.3d 1277, 1281 (11th Cir. 2007) ("The right to counsel in the immigration context is 'an integral part of the procedural due process to which the [non-citizen] is entitled.'" (citation omitted)).  Accordingly, a non-citizen may move to reopen his immigration proceedings based on ineffective assistance of counsel.  *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1273 (11th Cir. 2005).  In *Lozada*, the BIA established that, in bringing an ineffective-assistance-of-counsel claim, a non-citizen must: (1) support the motion with an affidavit setting forth the agreement with counsel and what action counsel did or did not take that violated that agreement; (2) inform counsel of the allegations; and (3) state whether a complaint has been filed with the "appropriate disciplinary authorities" regarding any alleged "violation[s] of ethical or legal responsibilities," or provide an explanation if such a complaint has not been filed.  *Gbaya*, 342 F.3d at 1221 (quoting *Lozada*, 19 I. & N. Dec. at 639); *see also id.* at 1221–22 (endorsing the *Lozada* standard).  The "appropriate" authority was not defined in *Lozada*.  *See Lozada*, 19 I. & N. Dec. at 639.

The BIA imposed these procedural requirements to aid in assessing the high number of ineffective assistance of counsel claims.  *Id.*  The disciplinary authority requirement, the BIA explained, was specifically designed to "deter meritless claims of ineffective representation" and "highlight[] the standards . . . expected of attorneys who represent persons in immigration

proceedings," the result of which has "enormous significance" to a petitioner who faces removal. *Id.* at 639–40.

Additional BIA case law emphasized five other important purposes the disciplinary authority requirement serves. First, it increases the BIA's confidence in an ineffective assistance claim's validity and strength. *Matter of Rivera-Claros*, 21 I. & N. Dec. 599, 604–05 (BIA 1996). Second, it reduces the likelihood of the BIA having to conduct an additional evidentiary hearing. *Id.* Third, it polices the immigration bar to ensure quality representation in immigration proceedings. *Id.* Fourth, it lessens the chance of collusion between a petitioner and counsel. *Id.* Fifth, overarching disciplinary authorities are well-positioned to determine if an attorney's misconduct reflects a pattern of poor practice, as opposed to a one-off instance. *Matter of Melgar*, 28 I. & N. Dec. 169, 170 (BIA 2020).

Nothing in *Lozada*—or any other published BIA or Eleventh Circuit case—holds that an attorney's state bar is the only appropriate disciplinary authority. If we read the BIA's use of "appropriate disciplinary authority" to mean "state bar complaint," we would be rewriting the BIA's own precedent, rather than allowing the BIA to "screen ineffective-assistance claims by using the three procedural requirements laid out in *Lozada*." *Point du Jour v. U.S. Att'y Gen.*, 960 F.3d 1348, 1350 (11th Cir. 2020). *Lozada* simply referred to notifying the *"appropriate disciplinary authorities"* for an attorney's breach of professional conduct in two separate instances. *See* 19 I. & N. Dec. at 639 (emphasis added). The EOIR disciplinary system is certainly an appropriate authority for a petitioner to

report an ethical or legal violation that occurred in immigration court.

We recognize that some BIA case law refers to the disciplinary authority requirement as the "bar complaint" requirement, a moniker first coined eight years after *Lozada* in *Rivera-Claros*, since one of the traditional disciplinary authorities petitioners have used is the state bar where their counsel was licensed. *Rivera-Claros*, 21 I. & N. Dec. at 603; *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 466 n.28 (1978) ("The organized bars, operating under codes approved by the highest state courts pursuant to statutory authority, have the primary responsibility for assuring compliance with professional ethics and standards by . . . lawyers licensed by the States."). The immigration court's disciplinary regulations in 1996, the time *Rivera-Claros* was published, were "not intended to be a comprehensive set of rules governing the practice of law in the immigration field and, indeed, [were] not as broad as the American Bar Association's Model Rules of Professional Conduct (1995), for example." *Rivera-Claros*, 21 I. & N. Dec. at 604. *Rivera-Claros* explained that this was why immigration courts relied on state bar disciplinary processes as "the first, and ordinarily the fastest, means of identifying and correcting possible misconduct." *Id.*

That may well have been true in 1996.[3] Nonetheless, a 2009 rule strengthened EOIR's disciplinary framework to expressly

---

[3] While it may have been true that the EOIR's disciplinary authority was not as developed as it is today, we are uncertain as to whether the EOIR should not have been considered an appropriate disciplinary authority even in 1996,

address the gaps in the immigration courts' own disciplinary processes that were outlined in *Rivera-Claros*. *See* Professional Conduct for Practitioners—Rules and Procedures, and Representation and Appearances, 73 Fed. Reg. 76914, 76915 (Dec. 18, 2008) (codified at 8 C.F.R. pts. 1001, 1003, and 1292) (stating that the 2009 rule sought "to strengthen the existing rules in light of the apparent gaps in the current regulation" (citing *Rivera-Claros*, 21 I. & N. Dec. at 604)); *see also Rivera-Claros*, 21 I. & N. Dec. at 609 (Schmidt, J. dissenting) (noting that while EOIR's disciplinary regulations in 1996 had "proved largely ineffective to deal with lapses in professionalism," he believed that the regulations would "be revised in the future to overcome [the outlined] shortcomings"). This change was designed to provide the immigration courts the "tools necessary to control their courtrooms and protect the[ir] adjudicatory system from fraud and abuse." Professional Conduct for Practitioners, 73 Fed. Reg. at 76915. The 2009 rule modeled its expanded-sanction authority on the ABA Model Rules of Professional Conduct. *Id.*

Now, the EOIR has a plethora of attorney discipline tools it can utilize "in the public interest," including the authority to impose disciplinary sanctions on a number of grounds. 8 C.F.R. § 1003.102. Those sanctions include disbarring or suspending someone from practicing before the BIA or all immigration courts;

given the text of *Lozada* and the stated goals of the reporting requirement. Regardless, we focus on the disciplinary authority as it exists today and at the time Pasqual-Andres filed his motion to reopen.

publicly or privately censuring an individual; or imposing other disciplinary sanctions as deemed appropriate. *Id.* §§ 1003.101(a)(1)–(4); *see, e.g.*, *Matter of Singh*, 26 I. & N. Dec. 623, 626 (BIA 2015) (suspending an attorney after he enlisted his legal assistant to impersonate him before Immigration Judges); *Matter of Shah*, 24 I. & N. Dec. 282, 288 (BIA 2007) (sanctioning an attorney for knowingly and willfully misrepresenting a material fact). Also, while these rules do not "supplant the disciplinary functions of the various state bars," they were designed to work in tandem with them. *See* Professional Conduct for Practitioners, 73 Fed. Reg. at 76915; *see, e.g.*, *Matter of Ramos*, 23 I. & N. Dec. 843, 848 (BIA 2005) (expelling an attorney after he was disbarred by the Supreme Court of Florida); *Matter of Gadda*, 23 I. & N. Dec. 645, 649 (BIA 2003) (expelling an attorney after the California State Bar Court recommended that he be disbarred). The EOIR may notify appropriate state or federal disciplinary authorities about any disciplinary complaint filed in lieu of, or in addition to, initiating its own disciplinary proceeding. 8 C.F.R. § 1003.106(d). Additionally, the EOIR "shall" report any non-private sanctions to applicable disciplinary authorities in every jurisdiction where the practitioner is licensed to practice. *Id.*; *see also Gadda v. Ashcroft*, 377 F.3d 934, 940–43 (9th Cir. 2004) (describing parallel attorney disciplinary proceedings that occurred in the BIA, a state court system, and federal court).

Given the enhancements to the EOIR's disciplinary program designed explicitly to address the concerns outlined in *Rivera-Claros*, we readily hold that an EOIR complaint is an appropriate disciplinary authority under *Lozada*. While *Rivera-Claros* recommended

the state bar as "the first, and ordinarily the fastest," authority, 21 I. & N. Dec. at 604, it did not hold that state bar disciplinary processes were the sole appropriate authority to satisfy the third prong of *Lozada*. Nor did *Lozada* inform non-citizens that they must file their disciplinary complaint with the state bar in order for it to satisfy the agency. *See generally* 19 I. & N. Dec. at 639–40. Indeed, our precedent suggests that the EOIR is an "appropriate disciplinary authority" under *Lozada*. In *Point du Jour*, we referred to both a bar complaint and an EOIR complaint similarly as "complaints to disciplinary authorities" under *Lozada*. 960 F.3d at 1351 (noting that Point du Jour submitted "*two* . . . disciplinary complaints" (emphasis added)).

Therefore, while a state bar complaint is an appropriate disciplinary authority for reporting deficient representation in immigration courts, we hold that it is not the only one. An EOIR complaint satisfies the third *Lozada* requirement, and the BIA abused its discretion by holding otherwise. *See Ferreira*, 714 F.3d at 1243 ("The BIA abuses its discretion when it misapplies the law in reaching its decision.").

### C. *Pasqual-Andres Substantially Complied with* Lozada

In the alternative, we grant the petition because Pasqual-Andres substantially complied with *Lozada*'s third requirement. *Lozada*, 19 I. & N. Dec. at 639.

When we first endorsed the BIA's reliance on *Lozada*, we reserved for another day whether strict compliance was required or

whether we would accept substantial compliance. *See Gbaya*, 342 F.3d at 1222–23 (ruling that the petitioner neither strictly nor substantially complied with *Lozada*'s requirements, so we did not need to decide whether substantial compliance was sufficient). Since then, we have often repeated that we require "substantial, if not exact, compliance with the procedural requirements of *Lozada* . . . ." *Dakane*, 399 F.3d at 1274; *see, e.g.*, *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1225 (11th Cir. 2023) (quoting *Dakane*, 399 F.3d at 1274 & n.7), *overruled in part on other grounds by Wilkinson v. Garland*, 601 U.S. 209, 217 n.2 (2024). Yet, we have never squarely addressed the substantial compliance issue because, in every case we have confronted, the petitioner neither strictly nor substantially complied with *Lozada*'s requirements. *See, e.g.*, *Point du Jour*, 960 F.3d at 1350; *but cf. Gutierrez-Mikan v. U.S. Att'y Gen.*, 163 F.4th 1331, 1335 (11th Cir. 2026) ("With *Lozada* still good law, Gutierrez-Mikan had to substantially comply with its requirements to show her counsel was ineffective.").

We join the majority of our sister circuits in holding that strict adherence to *Lozada* is not necessary. *See Jian Yun Zheng v. U.S. Dep't of Just.*, 409 F.3d 43, 46 (2d Cir. 2005) ("[R]eview on the merits may be conditioned on substantial compliance with the reasonable requirements set forth in *Lozada*."); *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 133 (3d Cir. 2001) (explaining that "[t]here are inherent dangers . . . in applying a strict, formulaic interpretation of *Lozada*," and generally agreeing with a "broader interpretation of *Lozada*"); *Barry v. Gonzales*, 445 F.3d 741, 746 (4th Cir. 2006) ("We will reach the merits of an ineffective assistance of counsel claim where the

alien substantially complies with the *Lozada* requirements, such that the BIA could have ascertained that the claim was not frivolous and otherwise asserted to delay deportation."); *Habchy v. Gonzales*, 471 F.3d 858, 863 (8th Cir. 2006) ("[A]n IJ does not abuse his discretion in requiring substantial compliance with the *Lozada* requirements when it is necessary to serve the overall purposes of *Lozada* . . . ."); *Castillo-Perez v. I.N.S.*, 212 F.3d 518, 526 (9th Cir. 2000) ("While the requirements of *Lozada* are generally reasonable, they need not be rigidly enforced where their purpose is fully served by other means.").[4]   Substantial compliance with the procedural requirements of *Lozada* is sufficient.

---

[4] Two circuits appear to mandate strict compliance with *Lozada*'s requirements. *See Hernandez-Ortez v. Holder*, 741 F.3d 644, 647 (5th Cir. 2014); *Lin Xing Jiang v. Holder*, 639 F.3d 751, 755 (7th Cir. 2011) ("[S]atisfying the requirements of *Lozada* is a necessary condition to obtaining reopening on the basis of ineffective assistance of counsel." (quoting *Jezierski v. Mukasey*, 543 F.3d 886, 889 (7th Cir. 2008))).   However, the Fifth Circuit in *Hernandez-Ortez* merely rejected the Ninth Circuit's holding that a petitioner informed their former counsel of the allegations against them—the second requirement—by filing a grievance with the state disciplinary authority—the third requirement. 741 F.3d at 647–48.   This aligns with Eleventh Circuit precedent, in which we found that similar circumstances failed to satisfy *Lozada*'s requirements whole cloth, given "the separate nature of the *Lozada* requirements."   *Point du Jour*, 960 F.3d at 1351 ("Reading compliance with the third *Lozada* requirement to simultaneously constitute substantial compliance with the notice requirement would eliminate any independent significance of the notice requirement.").   The Seventh Circuit similarly did not confront an issue of substantial compliance in *Lin Xing Jiang*.   There, the petitioner failed to satisfy any of the three *Lozada* requirements. 639 F.3d at 755.   Similarly, this would be insufficient in our Circuit, because a petitioner has neither strictly nor substantially complied

A petitioner substantially complies with *Lozada* when the requirements' overall purposes are satisfied by the petitioner's submission. *See Gbaya*, 342 F.3d at 1222 (relying on *Lozada*'s rationales and policy objectives as a reason for endorsing it); *cf. Point du Jour*, 960 F.3d at 1351 (holding that satisfying *Lozada*'s third requirement does not substantially comply with *Lozada*'s second requirement, because they are separate requirements with distinct purposes); *see also Lo v. Ashcroft*, 341 F.3d 934, 937 (9th Cir. 2003) ("When [*Lozada*'s policy] goals are met, we have not insisted upon strict compliance."); *Castillo-Perez*, 212 F.3d at 526 ("While the requirements of *Lozada* are generally reasonable, they need not be rigidly enforced where their purpose is fully served by other means."); *Yang v. Gonzales*, 478 F.3d 133, 143 (2d Cir. 2007) (referring to *Lozada*'s policy rationales to find substantial compliance); *Visoka v. U.S. Att'y Gen.*, 201 F. App'x 755, 759 (11th Cir. 2006) (unpublished) (holding that when the petitioner's "'notice' d[id] not satisfy [*Lozada*'s] policy, he cannot show even substantial compliance with *Lozada*").

*Lozada*'s stated reasons for the requirement that a petitioner submit a complaint to an appropriate disciplinary authority are: (1) "to deter meritless claims of ineffective representation," and (2) to "highlight[] the standards which should be expected of attorneys who represent persons in immigration proceedings . . . ." 19 I. & N. Dec. at 639–40. An EOIR disciplinary complaint satisfies

---

with *Lozada* when they wholly fail to comply with its requirements. *Gbaya*, 342 F.3d at 1222.

these delineated policy rationales, especially in the wake of the 2009 rule. Any deterrence effect embodied in requiring a bar complaint is reflected in an EOIR complaint, given the coordination between them. *See* 8 C.F.R. § 1003.106(d). Both threaten the possibility of severe sanctions, mandating that both the petitioner and the respondent take the process seriously. *See, e.g.*, 8 C.F.R. §§ 1003.101(a)(1)–(4). Also, the EOIR process is narrowly tailored to *Lozada*'s second goal. It enforces the requisite standards on every attorney practicing in front of an immigration court, and the EOIR possesses the power to prohibit attorneys from practicing in every immigration court across the country. *See id.* § 1003.101(a)(1). This is the same penalty the EOIR imposes when someone is suspended from or disbarred by a state bar. *Id.* § 1003.103(a). Thus, an EOIR complaint meets *Lozada*'s policy motivations.

Looking outside of *Lozada*, the EOIR disciplinary process matches other proffered purposes for a "bar complaint" requirement. *See Rivera-Claros*, 21 I. & N. Dec. at 604–05; *Melgar*, 28 I. & N. Dec. at 170. It increases confidence in effective assistance claims, and it lessens the likelihood of collusion between a petitioner and their lawyer, for the same reasons it deters meritless claims, discussed above. *See supra* pp. 11–13. It reduces the likelihood of additional discovery and hearings because it provides the EOIR an opportunity to first have a hearing and gather evidence. *See* 8 C.F.R. § 1003.106. The EOIR process polices the immigration bar specifically to ensure that those who practice within it are working in the public interest. *See id.* § 1003.102 (outlining broad grounds upon which disciplinary sanctions may be imposed). Finally, reporting

22-12848                Opinion of the Court                19

to the EOIR ensures that either it or the appropriate bar authority can address a pattern of misconduct, as opposed to concealing a standalone violation. *See id.* § 1003.106(d). These secondary purposes from *Rivera-Claros* and *Melgar* further support our conclusion that the EOIR complaint substantially complies with the disciplinary complaint requirement.

Considering that the difference between a bar complaint and an EOIR complaint is minor, and that an EOIR complaint satisfies the same policy goals as the bar complaint, an EOIR complaint substantially complies with the third *Lozada* requirement. The BIA abused its discretion in holding otherwise.[5]

---

[5] Pasqual-Andres also challenges the BIA's refusal to reopen this case *sua sponte*. We generally lack jurisdiction to review the BIA's decision not to reopen a case *sua sponte*, because the BIA's discretion is so extensive and standardless that it is not reviewable. *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293–94 (11th Cir. 2008); *see also Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1285–86 (11th Cir. 2016). However, we have explained that we might have jurisdiction to review such a decision when the BIA's refusal to reopen *sua sponte* raises colorable constitutional claims. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 871 (11th Cir. 2018), *overruled in part on other grounds by Santos-Zacaria*, 598 U.S. at 419-23 & n.2; *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284, 1284 n.2 (11th Cir. 2007). Here, we need not decide whether we can review this aspect of the BIA's decision, because we have already granted Pasqual-Andres the relief he is seeking: vacatur of the BIA's denial of his motion to reopen his immigration proceedings. We decline to decide anything more. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (explaining that, generally, "courts . . . are not required to make findings on issues the decision of which is unnecessary to the results they reach").

20                  Opinion of the Court                22-12848

## IV.   CONCLUSION

For the foregoing reasons, we grant Pasqual-Andres's petition for review and vacate the BIA's order denying the motion to reopen.

**PETITION GRANTED.**

22-12848        NEWSOM, J., Concurring in Part        1

NEWSOM, Circuit Judge, Concurring in part:

I concur in the Court's judgment and join Parts I, II, III.A, III.C, and IV of its opinion. I don't join Part III.B – not necessarily because I disagree with it, but because I don't think it's necessary to the resolution of the case. The BIA concluded that Pasqual-Andres didn't "substantially" comply with *Lozada*'s third prong when he filed an EOIR complaint. *Matter of Pasqual-Andres*, A208-197-319 at 3 (BIA July 29, 2022) (unpublished). We hold today (1) that substantial compliance with *Lozada* is sufficient and (2) that Pasqual-Andres substantially complied. *See* Maj. Op. at 15–20. We needn't go further to hold, in the alternative, that Pasqual-Andres not only substantially but also "*strictly* complied with *Lozada*." *Id*. at 9 (emphasis added). "Reasonable minds can differ, of course, but my own view . . . is that federal appellate courts should issue fewer alternative holdings." *United States v. Files*, 63 F.4th 920, 931 (11th Cir. 2023) (Newsom, J., concurring).

22-12848            GRANT, J., Concurring in Part                    1

GRANT, Circuit Judge, Concurring in part:

I respectfully concur in the majority opinion except for Part III.C.  It is not clear to me what "substantial compliance" means. Many of our sister circuits that have deemed substantial compliance sufficient have done so in cases where they have not found it present.  *See, e.g.*, *Zheng v. U.S. Dep't of Just.*, 409 F.3d 43, 46–47 (2d Cir. 2005); *Lu v. Ashcroft*, 259 F.3d 127, 133–35 (3d Cir. 2001); *Barry v. Gonzales*, 445 F.3d 741, 745–46 (4th Cir. 2006); *Habchy v. Gonzales*, 471 F.3d 858, 863–864 (8th Cir. 2006).  And others have found substantial compliance where it is quite likely that complete compliance was shown.  *See, e.g.*, *Lo v. Ashcroft*, 341 F.3d 934, 937–38 (9th Cir. 2003); *Buckley v. Blanche*, 177 F.4th 326, 332–33 (1st Cir. 2026). So these cases, whether together or apart, give us no road map. And because EOIR reporting constitutes full compliance with *Lozada's* third requirement, the facts here neither present nor answer the substantial compliance question.  *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), *overruled in part by Matter of Compean*, 24 I. & N. Dec. 710, 710 (A.G. 2009), *reinstated*, 25 I. & N. Dec. 1 (A.G. 2009).  I would save it for another day.